UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION (MASTER FILE) NO. 5:06-cv-316 - KSF

**IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006**

**RELATING TO THE FOLLOWING CASES:**

| | | |
|---|---|---|
| *Heyer v. USA, et al.* | 5:07-cv-273 | [DE #738] |
| *Clay v. USA, et al.* | 5:07-cv-274 | [DE #744] |
| *Polehinke v. USA, et al.* | 5:07-cv-272 | [DE #750] |
| *Comair, Inc. v. USA, et al.* | 5:07-cv-058 | [DE #808, 1090] |
| *Hunt v. Comair, et al.* | 5:06-cv-400 | [DE #823] |
| *Fahey, et al. v. Comair, et al.* | 5:07-cv-126 | [DE #826] |
| *Harris v. Comair, et al.* | 5:06-cv-292 | [DE #829] |
| *Moscoe v. Comair, et al.* | 5:06-cv-318 | [DE #832, 858] |
| *Towles v. Comair, et al.* | 5:06-cv-429 | [DE #835] |
| *Washington v. Comair, et al.* | 5:06-cv-385 | [DE #838] |
| *Winters, et al. v. Comair, et al.* | 5:07-cv-127 | [DE #841] |
| *Mallory v. Comair, et al.* | 5:07-cv-124 | [DE #885] |
| *Anderson v. Comair, et al.* | 5:07-cv-270 | [DE #965] |
| *Hunt v. Polehinke* | 5:07-cv-282 | [DE #969] |
| *Mallory v. Comair, et al.* | 5:07-cv-124 | [DE #972] |
| *Byrd v. Polehinke* | 5:07-cv-275 | [DE #975] |
| *Cone v. Polehinke* | 5:07-cv-271 | [DE #978] |
| *Dawson v. Polehinke* | 5:07-cv-300 | [DE #981] |
| *Harris v. Polehinke* | 5:07-cv-287 | [DE #984] |
| *Theodore v. Polehinke* | 5:07-cv-301 | [DE #987] |
| *Trimble v. Comair* | 5:07-cv-269 | [DE #991] |
| *Turner v. Polehinke* | 5:07-cv-330 | [DE #994] |
| *Kono v. Polehinke* | 5:07-cv-332 | [DE #997] |
| *Kono v. Polehinke* | 5:07-cv-334 | [DE #1000] |
| *Cone v. Comair* | 5:07-cv-015 | [DE #1023] |
| *Byrd v. Comair* | 5:06-cv-371 | [DE #1026] |
| *Lykins v. Comair, et al.* | 5:07-cv-306 | [DE #1049] |

## OPINION AND ORDER

\* \* \* \* \* \* \* \*

This matter is before the Court on the motions of Lexington-Fayette Urban County Airport Board ("Airport Board") and Lexington-Fayette Urban County Airport Corporation ("Airport Corporation") (collectively "Airport Defendants") to dismiss complaints against them on grounds of

governmental immunity.  Comair has also moved to stay any ruling on these motions [DE #905] pending its appeal in state court.  These motions are ripe for review.[1]

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   A.      **Procedural History of the Claims Filed**

Beginning in September 2006, the families and representatives of passengers on Comair Flight 5191 filed suits against Comair in Fayette Circuit Court and in this Court.  Comair removed the state court cases, claiming federal question jurisdiction under the Federal Aviation Act.  This Court rejected Comair's jurisdictional claim and remanded the cases to state court in April 2007. *In re Air Crash at Lexington, Kentucky, August 27, 2006*, 486 F. Supp.2d 640 (E.D. Ky. 2007). Meanwhile, Comair filed a separate lawsuit in this Court against the United States of America, Lexington-Fayette Urban County Airport Board, Lexington-Fayette Urban County Airport Corporation, and John Does 1-20 seeking apportionment, contribution or indemnity under Kentucky law for damages it paid or will pay as a result of the crash of Comair Flight 5191.  Following Comair's voluntary dismissal of the United States for lack of exhaustion, this Court dismissed the remaining parties for lack of subject matter jurisdiction, as there was no federal question, no diversity, and no longer any basis for supplemental jurisdiction [Opinion and Order dated April 18, 2007, DE #410].

Subsequently, Comair filed a third-party complaint in *Adams v. Comair*, one of the remanded cases, to assert against the Airport Defendants the same apportionment, contribution or indemnity claims raised in this Court.  On August 10, 2007, Fayette Circuit Judge James Ishmael held that the Airport Corporation, the Airport Board, the Members of the Airport Board in their official capacities as Board members, and officers or directors of the Airport Board and the Airport Corporation were entitled to immunity under *Inco, Ltd. v. Lexington-Fayette Urban County Airport*

---

[1]  While briefing is not complete in all cases, the issue of the immunity of the Airport Defendants was briefed in this Court previously, and the Court is fully aware of the arguments in favor and against.

*Board*, 705 S.W.2d 933 (Ky. Ct. App. 1985) [DE #738, #1029]. *Inco* held that the Airport Board was a county agency entitled to the immunity of the state and the county. *Id.* at 934. Judge Ishmael held that *Inco* had not been overruled and was binding on the circuit court [DE #1029, pp. 9-10]. Accordingly, the claims against the Airport Defendants were dismissed. The court held the order was applicable in state court to "all pending civil actions against Comair arising from the crash of Comair Flight 5191" [DE #738, p. 2]. Comair appealed the decision to the Kentucky Court of Appeals and requested that the case be transferred to the Supreme Court of Kentucky [DE #804]. The request for transfer remains pending before the Supreme Court.

On August 13, 2007, Comair moved [DE #544] to file third-party complaints in several of the federal court passenger cases against the United States (through the FAA), John Does 1 and 2, the Lexington-Fayette Urban County Airport Board, the Lexington-Fayette Urban County Airport Corporation, John Coon, and John Does 1 and 2. Also in August, Comair filed third-party complaints against the United States and certain employees of the Airport and John Does in the remanded state court cases. The Airport Board and Airport Corporation were not included in the new complaints in state court. The United States removed the previously remanded cases back to this Court on September 28, 2007.

Meanwhile, on August 24, James Polehinke and the representatives or families of the other Comair Crew Members, Jeffrey Clay and Kelly Heyer, filed claims against the United States and the Airport Board, Airport Corporation, and certain employees of the Airport. The Airport Defendants moved to dismiss those claims on October 1, 2007 [DE #738, 744, 750]. Additionally, several passengers filed claims against James Polehinke, who then filed third-party complaints against the Airport Defendants in those cases. The Airport Defendants moved to dismiss all of these claims on grounds of immunity.

On October 24, Comair moved to stay any decision by this Court on the Airport Defendants' motions to dismiss until Comair's appeal in *Adams v. Comair* "is fully resolved." [DE #905]. Most

3

of the Flight 5191 passenger lawsuits are now more than one year old.  Even if the Supreme Court of Kentucky accepts the request for transfer in the next few months, the subsequent briefing, oral argument and rendition of a decision on the issue of the Airport's immunity is likely to require many months following the date of transfer.  If a trial in these cases were to await a decision from the Supreme Court of Kentucky, most of the cases will be three years old or more before trial could proceed.  This Court does not believe it is appropriate or necessary to inject such a long delay into these proceedings.  Accordingly, the motion for stay will be denied.

Both the Airport Defendants and Comair have briefed Kentucky law on immunity extensively and very persuasively.  In summary, the Airport Defendants' position regarding its immunity relies heavily on *Inco, Ltd. v. Lexington-Fayette Urban County Airport Board*, 705 S.W.3d 933 (Ky. App. 1985), which held the Airport Board is a county agency and entitled to the immunity of the state and the county. Also important are *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001) and *Autry v. Western Kentucky University*, 219 S.W.3d 713 (Ky. 2007) holding that governmental immunity is extended to government agencies performing governmental functions.  The Airport Defendants further rely on *Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128 (Ky. 2004), which emphasized the sovereign immunity of Kentucky counties and urban county governments.   In support of their position, the Airport Defendants also cite several unpublished decisions that are consistent with their interpretation of Kentucky law.

Comair relies primarily on *Kentucky Center for the Arts Corporation v. Berns*, 801 S.W.2d 327 (Ky. 1991) and *Kea-Ham Contracting, Inc. v. Floyd County Development Authority*, 37 S.W.3d 703 (Ky. 2000).  It is Comair's position that the Supreme Court of Kentucky implicitly rejected *Inco* when it adopted the *Berns* two-part test, which focuses on control and funding.  Comair especially relies on so much of *Kea-Ham* as holds that the Floyd County Development Authority was a municipal corporation that was not protected from sovereign immunity, based on the *Berns* test, as the Board members had independent responsibility for making decisions for the Authority and

4

the Authority had several alternate means of funding.  Comair relies on the terms of office and decision making of the Airport Board members and alternate sources of funding for the Airport Board and Airport Corporation to argue that they fail the *Berns* test in the same manner as *Kea-Ham*.  Comair also seeks support from the notes of a construction engineer purportedly memorializing a conversation with a city engineer who expressed the opinion that the "Airport is not a government agency, it is a private entity."  [DE #906, p. 18; Ex. 7].  Comair further argues that the functions of the Airport Board and Airport Corporation are proprietary, rather than governmental.  Additional arguments raised by the parties are addressed more fully below.

## II.    ANALYSIS

### A.    Motion to Dismiss Standard of Review

Under the new standard for ruling on a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  "All factual allegations are deemed true and any ambiguities must be resolved in plaintiff's favor." *Persian Galleries, Inc. v. Transcontinental Ins. Co.*, 38 F.3d 253, 258 (6th Cir. 1994).  A district court weighing a motion to dismiss asks "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly*, 127 S. Ct. at 1969 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.    Applicability of Kentucky Law and Its Interpretation

The parties do not disagree on whether Kentucky law controls the question of any immunity applicable to the Airport Defendants.  The only disagreement involves the interpretation of that law. The Supreme Court of Kentucky admitted "the decisions of Kentucky appellate courts have not at all times been entirely consistent as to which entities are entitled to immunity...." *Withers v. University of Kentucky*, 939 S.W.2d 340, 344 (Ky. 1997).  In applying state law, a district court is to "anticipate how the relevant state's highest court would rule in the case and [is] bound by

controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.*  If the question is undecided, a federal court must make the "best prediction, even in the absence of direct state court precedent, of what the Kentucky Supreme Court would do if it were confronted with [the] question." *Combs v. International Ins. Co.*, 354 F.3d 568, 577 (6th Cir.  2004) (quoting *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988)).  This Court is of the opinion that Kentucky courts have discussed the issues sufficiently to make a confident prediction of what the Supreme Court of Kentucky would do.

### C.     Sovereign Immunity

"From birth, the States and the Federal Government have possessed certain immunities from suit in state and federal courts." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)).   "That immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution." *Ernst,* 427 F.3d at 758; *see also Alden*, 527 U.S. at 713 ("the sovereign immunity of the states neither derives from, nor is limited by, the terms of the Eleventh Amendment," but rather, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today").

Under federal law, "immunity does not attach if the lawsuit is not against the State or an 'arm of the State.'" *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280 (1977).  While some states do not extend sovereign immunity to their political subdivisions,[2] Kentucky law unquestionably extends sovereign immunity to its counties.  Kentucky counties predated the Kentucky Constitution like the states predated the federal Constitution.  *See*

---

[2] "Under Ohio law, the 'State' does not include 'political subdivisions,' and 'political subdivisions' do not include local school districts."  *Mt. Healthy,* 429 U.S. at 280.

6

*Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128, 133-134 (Ky. 2004) ("County governments in Kentucky are cloaked in sovereign immunity, unless such immunity is expressly waived"); *Doe v. Patton*, 381 F. Supp. 2d 595, 602 (E.D. Ky. 2005) (County governments in Kentucky are cloaked in sovereign immunity).  "Under Kentucky law, counties are treated markedly different from other local government units, *e.g.* municipal corporations, due to a county's unique status under the Kentucky Constitution."  *Smolcic*, 142 S.W.3d at 133.  *See also Schwindel v. Meade County,* 113 S.W.3d 159, 163 (Ky. 2003) ("A county government is cloaked with sovereign immunity"); *Yanero  v. Davis*, 65 S.W.3d 510, 526 (Ky. 2002) (Counties are entitled to sovereign immunity).  This difference in treatment is recognized by the Restatement (Second) of Torts § 895C, Comment a, as follows:

> Under the governmental structure of some States, however, certain types of geographic subdivisions, such as counties and school districts, have been held to be entitled to any broader immunity (either from suit or from tort liability) that has been retained for the State itself, rather than being subjected to the type of liability that is applicable to cities and towns.

In *Louisville & Jefferson County Board of Health v. Calvert Investments, Inc.*, 805 S.W.2d 133 (Ky. 1991), the court acknowledged that Kentucky "treat[s] tort liability for school districts and counties differently from other local entities."  *Id.* at 138.

Additionally, the sovereign immunity of Kentucky counties applies to urban county governments.  "We reaffirm our holding in *Holsclaw* [*v. Stephens*, 507 S.W.2d 462 (Ky. 1974)] that urban county governments constitute a new classification of county government.  Therefore, we hold that [Lexington-Fayette Urban County Government] is entitled to sovereign immunity and affirm the Court of appeals on this issue."  *Smolcic*, 142 S.W.3d at 132.   *See also*, *Fields v. Lexington-Fayette Urban County Government,* 91 S.W.3d 110, 112 (Ky. Ct. App. 2001) ("[T]he trial count properly awarded summary judgment to LFUCG based on the doctrine of sovereign immunity") ; *Inco. Ltd. v. Lexington-Fayette Urban County Airport Bd.,* 705 S.W.2d 933, 934 (Ky. Ct. App. 1985) ("Lexington-Fayette Urban County Governmental Unit is a county and thus entitled

to the protection afforded the state"); *Hempel v. Lexington-Fayette Urban County Government*, 641 S.W.2d 51, 53 (Ky. Ct. App. 1982) (An urban county government "is, like a county government, an arm of the state entitled to the protective cloak of sovereign immunity").

>    **D.    The Extension of Immunity to State or County Agencies**

Comair correctly argues that their lawsuit is not against the urban county government itself [DE #906, p. 13].   Instead, the claims are against units or agencies of the urban county government, the Airport Board and the Airport Corporation.  The question becomes to which units or agencies of the state or county does immunity extend.  Before addressing the Airport Board and the Airport Corporation specifically, it is helpful to review the cases relied upon by the parties regarding immunity under Kentucky law.

In *Gnau v. Louisville & Jefferson County Metropolitan Sewer District,* 346 S.W.2d 754 (Ky. 1961), the court interpreted the phrase "agency of the state" in the context of those agencies for which there was a waiver of immunity through the Board of Claims Act, KRS 44.070.  It said, "the waiver of immunity attaches only to those agencies which are under the direction and control of the central State government and are supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury."  *Id.* at 755.  It held that the Sewer District was an independent corporation "performing a governmental function and thus entitled to immunity from liability for its negligence."  *Id.*

In 1985, the Supreme Court denied discretionary review and ordered published the *Inco* decision in which the Court of Appeals held that the Lexington-Fayette Urban County Airport Board was an agency of the county and, as a result, was entitled to the immunity of the state and the county.

In *Kentucky Center for the Arts Corporation v. Berns*, 801 S.W.2d 327 (Ky. 1991), the court recognized that the holding in *Gnau* was connected to the definition of state agency in the Board

of Claims Act.[3]  *Id.* at 331.  It said that "the fundamental premise stated in *Gnau* expresses both the reach of state sovereign immunity and the waiver of that immunity in the Board of Claims Act."[4] *Id.*  The *Berns* court applied the *Gnau* test to the Kentucky Center for the Arts.  The court held that "the Kentucky Center for the Arts Corporation was not created to discharge any 'governmental function'...."  *Id.* at 330.  It further held that, because the Center for the Arts was not under the direction and control of the central state government and was performing the proprietary function of providing entertainment, it did not qualify for sovereign immunity.  *Id.*  In distinguishing between a state agency and a municipal corporation, the court held that the dividing line was not whether the entity was created by the state or a city, "but whether, when viewed as a whole, the entity is carrying out a function integral to state government."  *Id.* at 332.

Next, the Kentucky courts decided *Withers v. University of Kentucky*, 939 S.W.2d 340 (Ky. 1997), involving a wrongful death action arising from treatment at the University of Kentucky Medical Center.  The court reviewed the statutory authorization for the University and held it was an agency of the state that "operates under the direction and control of central state government and that it is funded from the State Treasury."  "The University of Kentucky precisely meets the *Berns* test...."  *Id.* at 342.  In response to a claim that the Medical Center performed a proprietary function, the same as private hospitals, the court said the "operation of a hospital is essential to the teaching and research function of the medical school."  *Id.*

In *Kea-Ham Contracting, Inc. v. Floyd County Development Authority*, 37 S.W.3d 703 (Ky. 2000), the court held that the Development Authority was a municipal corporation unprotected by sovereign immunity because it failed to satisfy either prong of the *Berns* test.  The court said the

_____

[3]  *See also Calvert Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer District*, 805 S.W.2d 133, 137 (Ky. 1991) ("*Gnau* holds only that MSD did not qualify as 'a State agency as that term is employed in KRS 44.070 (the Board of Claims Act)'").

[4]  *Yanero v. Davis*, 65 S.W.3d 510, 524 (Ky.2001) implicitly refutes this position when it states that the Board of Claims Act was "not a creation of immunity, but rather a limited waiver of immunity."

Authority's members had independent responsibility for decisions for the Authority and its funding was "not limited to appropriations from the central government...." *Id.* at 706-707.

In *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), the issue was whether the Jefferson County Board of Education was entitled to governmental immunity for its interscholastic athletic activities when a student was injured while not wearing a batting helmet. The court considered prior decisions and held "[t]here can be no doubt from these decisions but that the County Board of Education is an arm of the state and that in operating common schools it is engaged in a governmental function." *Id.* at 526. As a result, it is "entitled to governmental immunity, but not sovereign immunity." *Id.* at 527.

The court sought to clarify the terminology for the various forms of immunity and the nature of the entities to which it extends. Sovereign immunity, also known as "absolute immunity from suit," is "a common law concept recognized as an inherent attribute of the state." *Id.* at 518, 523. Sovereign immunity is extended to counties "because they are local governments authorized and recognized as such by the Constitution." *Id.* at 526. "Governmental immunity," on the other hand, is a public policy "that limits imposition of tort liability on a government agency." *Id.* at 519. A governmental agency "is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function." *Id.* Governmental corporations are treated the same as governmental agencies for immunity purposes. *Id.* at 520.

*Yanero* explained that the *Berns* test factors "are primarily relevant to determining whether an entity is properly classified as a state agency." The "ultimate holding in *Berns* was that the Center for the Arts, though created by the state, was not entitled to immunity because it 'was not created to discharge any "governmental function."'" *Id.* at 520.

*Autry v. Western Kentucky University*, 219 S.W.3d 713 (2007), is the most recent decision on the subject of immunity. In *Autry*, the representatives of a college student who was killed in her

dormitory brought a wrongful death action against Western Kentucky University ("WKU"), various

officials, and the Student Life Foundation ("SLF") that owned the dormitory. The court said:

> Governmental immunity extends to state agencies that perform governmental
> functions (i.e., act as an arm of the central state government) and are supported by
> money from the state treasury. However, unless created to perform a governmental
> function, a state agency is not entitled to governmental immunity.

*Id.* at 717 (citations omitted). It held that WKU was a state agency because it served as an arm

of the state performing the function of educating state citizens and because "it receives money from

the state treasury in support of this function." *Id.*

Regarding the SLF, the court noted that it was a corporation created to hold title to the

dormitory properties and that it was to operate for the exclusive benefit and support of another

corporation, the WKU Foundation. By owning the dormitories, "SLF could use Warren County's

bonding authority to finance the renovations of the dormitories." SLF entered into a management

agreement for WKU to operate the dormitories. The court held that "SLF acts as an alter ego of

WKU for purposes of holding title to the dormitory properties and obtaining funding to refurbish

them." Accordingly, SLF derives its immunity status through WKU. *Id.* at 719.

### E.    Authorization for the Lexington-Fayette Urban County Airport Board and the Lexington-Fayette Urban County Airport Corporation

Chapter 183 of the Kentucky Revised Statutes, the "Aviation" chapter, regulates aviation

in Kentucky in conjunction with the Federal Aviation Administration. The statutes specifically

provide for the creation of local air boards[5] and creation and development of airports. *See* KRS

183.132 et seq. The Transportation Cabinet is authorized to prescribe rules and regulations to

carry out the provisions of the Aviation Chapter and other statutes relating or incidental to the field

of aeronautics. KRS 183.024. Both an "urban-county government" and an "air board" are defined

as a "governmental unit." KRS 183.012(2). An urban-county government is authorized to establish

an air board, which "shall be a body politic and corporate with the usual corporate attributes" and

---

[5] No one claims that the Airport Board was created improperly.

"shall constitute a legislative body for the purposes of KRS 183.630 to 183.740." KRS 183.132(1), (3). Regarding whether the air board is carrying out a governmental or proprietary function, KRS 183.123 provides in part regarding the public purpose:

> [T]he acquisition, establishment, construction, enlargement, improvement, maintenance, equipping, and operation of airports and other air navigation facilities, whether by the state separately or jointly with any governmental unit thereof or air board ... <u>are hereby declared to be public and governmental functions</u> exercised for a public purpose, and matters of public necessity....

*Id.*, emphasis added.

The Airport Corporation was incorporated as a non-profit corporation in 1976 "to act as a 'public agency' of the State of Kentucky as well as an agency for financing purposes for the benefit of the Airport Board and the Urban County Government." Article 3 of Articles of Incorporation [DE #186, Ex. A]. It was formed for "governmental purposes" to enable the Airport Board and Urban County Government "to acquire, construct, equip and operate airport facilities and appurtenances thereto, for the public interest...." *Id.* Its Articles were amended in 1984 to provide that "the governing body of the Airport Board and the governing body of the Urban County Government shall exercise (a) organizational control over the Corporation ... or (b) supervisory control over the Corporation as may be deemed proper...." [DE #186, Ex. B, Article 2]. Article 4 was amended to expressly provide that the "Corporation is created and shall be operated solely and only to accomplish one or more of the public purposes of the Airport Board and the Urban County Government...." All net revenue inures to the benefit of the Airport Board and Urban County Government. Article 7. Thus, the Airport Corporation exists and functions only to serve the Airport Board and the Urban County Government.

### F. Whether the Airport Board and Airport Corporation Are Entitled to Immunity

As discussed above, a county and an urban-county government in Kentucky have absolute sovereign immunity. *Doe*, 381 F.Supp.2d at 602; *Smolcic*, 142 S.W.3d at 133; *Schwindel,* 113 S.W.3d at 163*; Yanero*, 65 S.W.3d at 526. It is "inherent immunity" arising from the unique status

of a county and its recognition in Kentucky's Constitution, like the inherent immunity of the State. *See Yanero*, 65 S.W.3d at 526.  An airport board, unlike a typical agency created by statute, is expressly declared to be a "governmental unit."  It also is a "legislative body" for certain purposes.

After reviewing these decisions, it is the conclusion of this Court that the Supreme Court of Kentucky would hold an airport board is an "arm" of the county, when created by a county or an urban-county government, for carrying out the functions of state government.  The functions of constructing, improving, maintaining, and operating airports were declared by the General Assembly "to be public and governmental functions" to be performed by the state or a governmental unit.  KRS 183.123.  While *Inco* did not elaborate on its rationale, it clearly held that the inherent immunity of the state and the county is extended to the Airport Board.  *Inco*, 705 S.W.2d at 934.  *Inco* was recently cited favorably on other grounds by the Supreme Court in *Smolcic*, 142 S.W.3d at 136.  Nothing in the recent decisions of the Supreme Court suggest that the holding of *Inco* is no longer good law.

The immunity of the Airport Board is not determined by whether it is a "state agency" for purposes of the Board of Claims Act.  *See Gnau*, 346 S.W.2d at 755; *Berns*, 801 S.W.2d at 331; *Yanero*, 65 S.W.3d at 520.  The Board of Claims Act "represents not a creation of immunity, but rather a limited waiver of immunity to the extent that immunity exists."  *Yanero*, 65 S.W.3d at 524.  Counties are not state agencies subject to the Board of Claims Act.  *Smolcic*, 142 S.W.3d at 133-134.  In the opinion of this Court, the legislative definition of an airport board as a governmental unit, the governmental functions performed, and the inherent sovereign immunity of an urban-county government creating the board are the controlling factors.  Accordingly, the Court is of the opinion that the Supreme Court of Kentucky would hold the *Berns* test is not applicable to the Airport Board.

Even if the *Berns* factors did apply, however, this Court is of the opinion that the Kentucky courts would hold the Airport Board satisfies those factors.  The Airport Board is subject to

13

regulation and control by the state and the urban-county government in much the same way as state universities and county boards of education. *See Autry*, 219 S.W.3d at 717; *Yanero*, 65 S.W.3d at 526. It also receives money from the state treasury in support of its function, like Western Kentucky University and the University of Kentucky Medical School. *Autry*, 219 S.W.3d at 717; *Withers*, 939 S.W.2d at 342. While the Kentucky court suggested in *Kea-Ham* that funding from sources other than the central government could be a disqualifying factor, *Kea-Ham*, 37 S.W.3d at 706-707, external funding from dormitory fees, revenue bonds and tuition did not disqualify WKU, nor did funding from medical fees, tuition, and grants disqualify the University of Kentucky Medical Center from meeting the *Berns* test. *See Autry*, 219 S.W.3d at 717; *Withers*, 939 S.W.2d at 342. *See also Kea-Ham*, 37 S.W.3d at 709 (Johnstone dissenting) ("I cannot find a requirement set forth in Berns which mandate exclusive reliance by governmental entities on the state treasury.... Certainly the University of Kentucky could not have satisfied such a test in *Withers"*). Additionally, the Airport Board and the Airport Corporation are co-owned by the Lexington-Fayette Urban County Government [DE # 1065, p.7]. Without question, the Airport Board discharges a "governmental function." KRS 183.123. This was the critical factor that disqualified the Kentucky Center for the Arts from being a state agency. *Yanero*, 65 S.W.2d at 520; *Berns*, 801 S.W.2d at 330.

Comair argues there is extensive Kentucky case law that air boards were municipal corporations and not state agencies or arms of the state [DE #906, pp. 13-14]. That argument ignores the fact that urban county governments are relatively new forms of government, which uniformly have been held to have sovereign immunity. *See Smolcic*, 142 S.W.3d at 132 (Lexington-Fayette Urban County Government has absolute immunity); *Stankowski v.Abramson, 2007 WL 3171787 (W.D. Ky. 2007) at* *1 ("Metro is 'accorded the same sovereign immunity granted counties'"). As the Supreme Court of Kentucky acknowledged in *Schwindel*, 113 S.W.3d at 164, "[c]ounties and municipalities are afforded different degrees of immunity from tort liability."

It is the opinion of this Court that the Supreme Court of Kentucky would hold the Airport Corporation is also entitled to governmental immunity. It was created as the instrumentality of the Airport Board for purposes of issuing revenue bonds and otherwise financing the activities of the Airport Board. It appears to be one of the many non-profit governmental corporations used by state and local governments to issue revenue bonds and function consistently with the limitations on debt imposed by Sections 157 and 158 of the Kentucky Constitution. It is specifically subject to the control of the Airport Board and the Urban-County Government. It exists and functions only to serve and carry out the governmental functions of the Airport Board and the Urban-County Government. It is co-owned by the Urban-County Government [DE #1065, p. 7]. This Court concludes that the Supreme Court of Kentucky would hold the Airport Corporation is an arm of the urban-county government to which the *Berns* test is not applicable. At a minimum, it is a governmental corporation performing a governmental function and is entitled to governmental immunity.

These conclusions regarding what the Supreme Court of Kentucky would hold are further supported by several state and federal court unpublished decisions. *Criswell v. Wayne County, Ky.,* 1998 WL 598739 at *7 (6th Cir. 1998) ("The state claims against the county and county officials in their official capacity are also barred by state sovereign immunity); *Crawford v. Lexington-Fayette Urban County* Government, 2007 WL 101862 at *1 (E.D. Ky. 2007) (Kentucky counties are cloaked with sovereign immunity under Kentucky law); Alexander *v. Coleman*, 1989 WL 107380 at *2 (E.D. Ky. 1989) (Kenton County Airport Board is entitled to sovereign immunity); *Adams v. Comair, Inc.*, Fayette Circuit Court Civil Action No. 06-CI-3749 (2007) (Airport Defendants are entitled to immunity under *Inco*) ; *Bakke v. Continental Airlines,* Fayette Circuit Court Civil Action No. 05-CI-4522 (2005) (Airport Board is entitled to immunity under *Inco*).

15

Under *Twomby*, 127 S.Ct at 1874, the complaints in these cases do not state plausible claims against the Airport Defendants because they are immune from suit.  The Airport Defendant's motions to dismiss must be granted.

**G.    Whether the Immunity of the Airport Board and Airport Corporation Has Been Waived**

Comair argues that any immunity of the Board and Corporation must be questioned because the Board purchased insurance, and the Airport Defendants are being defended under that policy.  The exact same argument was rejected in *Withers*.  Regarding whether the purchase of liability insurance by the Medical School was a waiver of sovereign immunity, the court noted that KRS 44.073(14) was enacted to overrule a decision to that effect.  "If immunity exists, it is not lost or diminished or affected in any manner by the purchase of liability insurance...." *Id.*, 939 S.W.2d at 346.  Moreover, county immunity, unlike municipal immunity, "is not a creation of the courts and can only be waived by the General Assembly." *Smolcic*, 142 S.W.3d at 132.

**H.    Whether Airport Board and Airport Corporation Officials, Sued in their Official Capacity, Are Entitled to Immunity**

"When an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled...." *Yanero*, 65 S.W.3d at 522.  "If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity." *Autry*, 219 S.W.3d at 717.  To the extent that any officials or employees of the Airport Board or Airport Corporation have been named as defendants in their official capacity, they have governmental immunity and should be dismissed.

**I.    Comair's Argument Regarding Ministerial Acts is Misplaced**

Comair argues that the conduct of the Airport Defendants was ministerial, rather than discretionary, in nature, thereby depriving them of immunity.  This argument might be appropriate if anyone associated with the Airport Board or Airport Corporation and sued in their "individual"

16

capacity, so as to raise a question of qualified official immunity, had moved to dismiss.  *See Yanero*, 65 S.W.3d at 521-522.  It appears that none of the John Does have been identified or served.  Moreover, there is no motion to dismiss on behalf of any person sued in his individual capacity.  Accordingly, there is no question before this Court regarding qualified immunity or ministerial acts.

III.    **CONCLUSION**

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS**:

A.    Comair's Motion to Stay Ruling on Airport Defendants' Motions to Dismiss [DE # 905] is **DENIED**;

B.    The Motions of the Airport Board and the Airport Corporation to Dismiss [DE #s 738, 744, 750, 808, 823, 826, 829, 832, 835, 838, 841, 858, 885, 965, 969, 972, 975, 978, 981, 984, 987, 991, 994, 997, 1000, 1023, 1026, 1049 and 1090] are **GRANTED**; and

C.    The Airport Board, Airport Corporation, Airport John Does in their official capacity, John Coon in his official capacity, Michael Gobb in his official capacity, John Slone in his official capacity and Martin Woodford in his official capacity are **DISMISSED WITH PREJUDICE**.

This November 26, 2007.



Signed By:

*Karl S. Forester*  KSF

**United States Senior Judge**